UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARTHUR EDWARD SMITH,

     Plaintiff,

v.                           Case No.:  2:22-cv-340-SPC-NPM

JPMORGAN CHASE BANK, N.A.,

     Defendant.

_____/

## OPINION AND ORDER[1]

Before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss the Amended Complaint.  (Doc. 25).  Pro se Plaintiff Arthur Smith has not responded, and the time to do so has ended.  For the below reasons, the Court grants Defendant's motion but will give Plaintiff another chance to plead his claims.

## BACKGROUND[2]

Smith sues JPMorgan for race discrimination and intentional infliction of emotional distress because a bank teller refused to cash his paycheck.  Smith

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them.  The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

[2] As it must, the Court treats the factual allegations in the Amended Complaint as true and construes them in the light most favorable to Smith.  *See* Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).

is a Chase account holder.  In January 2022, he went to a Chase bank branch with his paycheck in hand to deposit some and cash the rest.  At the window, he inserted his debit card and provided his driver's license and Social Security card.  The teller told him that the bank does not cash such a payroll check because the employer didn't have a Chase account.  (Doc. 23 at 6).  Confused, Smith explained how he deposited online a paycheck from the same employer just three weeks before.

The teller tried again only to say, "due to the large amount, the system wouldn't allow him" to move forward.  (Doc. 23 at 6).  Smith questioned the statement because he was only depositing $873.64.  He also said, "I got cause to believe, you're just flat out discriminating against me.  You got no legitimate reason to believe, I'm not here on the 'up and up.'  And you know god damn well . . . if I looked like those people (all other non-black customers present) you wouldn't be treating me like this."  (Doc. 23 at 6).

The situation escalated as other bank employees interjected.  One employee "badger[ed Smith] with offensive looks" and told him to "hold it down."  (Doc. 23 at 6).  Smith responded, "Why don't you tell your collegue [sic] to stop being discriminatory and do his job according to prevailing banking norms and Chase policies."  (Doc. 23 at 6-7).  And a third bank employee called the police.

When the police arrived, officers spoke with both employees and Smith. Smith's version was the teller would not cash his check because he was African-American, and "he needed to stop being racist and treating [him] according to prevailing banking norms." (Doc. 23 at 7). After hearing both sides, an officer accompanied Smith to try again to cash his check. This worked no better.

The teller explained Chase's system would not let him cash the check because of Smith's $3.61 negative balance. (Doc. 23 at 7). Smith responded any negative balance was because of Chase's $5.00 monthly service charge posted three days earlier. The officer then asked the teller if he could case the check if Smith paid the $3.61 right away. The response was, "No—the system still will not do it." (Doc. 23 at 8). Believing his suspicions about race discrimination were confirmed, Smith left the bank and later sued.

Smith has sued Chase for race discrimination under 42 U.S.C. § 1981 and for intentional infliction of emotional distress ("IIED") under Florida law. He alleges Chase employees acted out of racial animus in denying him the right to enjoy the privileges and benefits of his bank account, and they badgered, embarrassed, humiliated, emotionally distressed, and mentally anguished him only because he is a black male. For its part, Chase moves to dismiss the Amended Complaint for failure to state claims on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

**LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), this Court accepts as true all allegations and construes them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). And this Court favors the plaintiff with all reasonable inferences from the allegations. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). But the Supreme Court explains:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). And courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court has set a two-pronged approach to motions to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). First, a court must determine whether the plaintiff's allegation is merely an unsupported legal

conclusion not entitled to an assumption of truth. *Id.* at 678. Second, it must

determine whether the complaint's factual allegations state a plausible claim

for relief. *Id.* at 679.

Relevant here, pro se complaints are construed liberally and held to less

stringent standards than formal pleadings that lawyers draft. *See Campbell

v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But the leniency

has limits. Courts neither "serve as de facto counsel for a [pro se] party," nor

"rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at

1168-69 (citation omitted); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th

Cir. 1989) (*pro se* litigants are "subject to the relevant law and rules of court,

including the Federal Rules of Civil Procedure").

## DISCUSSION

Chase moves to dismiss the Amended Complaint because Smith cannot

plausibly state claims for race discrimination and IIED. The Court agrees and

explains why below.[3]

### A. Race Discrimination (Count One)

Under § 1981, all people have the right "to make and enforce contracts

regardless of race. 42 U.S.C. § 1981(a). So to bring a claim for § 1981 race

---

[3] In a footnote, Chase maintains the Amended Complaint is a shotgun pleading. (Doc. 25 at 2 n.1). The Court disagrees. Although the Amended Complaint is not a model of clarity, it provides Defendant "adequate notice of the claims against them and the grounds upon which each claim rests" to defeat a shotgun pleading challenge. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

discrimination, a plaintiff must allege (1) he belongs to a racial minority; (2) the defendant intended to discriminate based on race; and (3) the discrimination caused a contractual injury. *See Zidayat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021) (citations omitted).

The Amended Complaint sufficiently pleads the first and third elements: Smith is an African American male who could not cash his paycheck even though he is a Chase account holder. It's the second element that trips up the Amended Complaint.

A plaintiff may establish intentional race discrimination directly or circumstantially. *Id.* (citation omitted). For direct discrimination, "a plaintiff must allege the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language." *Id.* (citation omitted). For circumstantial-based discrimination, a plaintiff "may proceed under the *McDonnell Douglas* burden-shifting framework," which requires the plaintiff to "point to comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Id.* (citation omitted).

Even under a liberal construction, the Amended Complaint fails to allege a direct or circumstance case of race discrimination. The pleading does not contend that the Chase employees "ever disparaged [Smith's] race, used racially charged language, or otherwise said anything about race to anyone."

*See id.* Nor are there any allegations that Smith was treated differently from any other Chase patrons. In fact, Smith does not mention any comparator, much less one who was similarly situated to him in all material respects. *See Nganga v. Robins Fed. Credit Union*, No. 5:22-cv-144, 2022 WL 14786941, at *3 (M.D. Ga. Oct. 25, 2022). At bottom, the allegations of race discrimination are unsupported conclusions. Because the Amended Complaint does not adequately allege that Chase intended to discriminate against Smith because of his race, the Court dismisses without prejudice Count One.

## B. Intentional Infliction of Emotional Distress (Count Two)

To state a claim for IIED under Florida law, a plaintiff must show: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). To show outrageous conduct, the plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson,* 467 So.2d 277, 278-79 (Fla. 1985). Liability, however, does not "extend to mere insults, indignities, threats, or false accusations." *Williams v. Worldwide Flight Servs. Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004) (citation

omitted); *see also Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) ("Florida courts have been reluctant to find claims for [IIED] based solely on allegations of verbal abuse." (quotation omitted)).

Even if taking as true the allegations in the Amended Complaint, they do not reflect conduct so reprehensible and objectionable to raise to the level so extreme and outrageous to permit Smith to recover for IIED. The Amended Complaint alleges a verbal exchange between Smith and bank employees that got police involved, it did not escalate beyond mere insults, indignities, and false accusations. Indeed, Florida courts have repeatedly held that conduct far worse than that alleged here cannot maintain a claim for IIED. *See, e.g.,* *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557-58 (11th Cir. 2008) (finding no outrageous conduct when the plaintiff saw a police officer point an unloaded BB gun at her and pull the trigger); *Williams v. Worldwide Flight Servs. Inc.,* 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004) (finding no pattern of workplace harassment where the supervisor made racial epithets in front of plaintiff and to others). The Court thus dismisses without prejudice Count Two.

Accordingly, it is now

**ORDERED:**

Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss (Doc. 25) is **GRANTED**.

1. The Amended Complaint (Doc. 23) is **DISMISSED without prejudice**.

2. Plaintiff Arthur Smith must file a second amended complaint on or before **May 1, 2023.  Failure to do so will cause the Court to dismiss this action with prejudice without further notice.**

**DONE** and **ORDERED** in Fort Myers, Florida on April 17, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record